# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2001

_____

Matt Raeburn

*Plaintiff - Appellant*

v.

James Gibson, Individually; and in his Official Capacity as a Police Officer for the City Of Vilonia

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: May 13, 2021
Filed: August 31, 2021
[Unpublished]

_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.

_____

PER CURIAM.

Following his arrest at a high school baseball game, Matt Raeburn sued the City of Vilonia and Vilonia Police Officer James Gibson under 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights and under Arkansas state law.

The district court[1] granted summary judgment in favor of the City and Officer Gibson on the § 1983 claims. The district court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. Raeburn appeals the grant of summary judgment on the § 1983 claims. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On April 9, 2018, Matt Raeburn was attending his son's baseball game at Vilonia High School—the team for which his son played—in Vilonia, Arkansas, when he got into a verbal altercation with a parent of the visiting school, Searcy High School, and Butch Schucker, Searcy's Athletic Director. Administrators from both schools were concerned about the situation, particularly Raeburn's behavior, and Vilonia High School Vice Principal James "Rick" Kelley called the police. Vilonia Police Officer James Gibson responded. When he arrived, Officer Gibson spoke to Kelley and Schucker. They told Officer Gibson that Raeburn was the one who started the incident and pointed Raeburn out. Officer Gibson asked Kelley what he wanted done. Kelley told Officer Gibson to pull Raeburn to the side and ask him to calm down, and if Raeburn could calm down and stay quiet, he could remain at the game, but if he could not, he would have to leave.

Officer Gibson's dash cam captured his interaction with Raeburn, and the video footage was part of the summary judgment record. Officer Gibson approached Raeburn and asked him to step to the front of Officer Gibson's patrol car. Raeburn was argumentative but eventually complied. Officer Gibson then attempted to engage with Raeburn about why Officer Gibson was called there, but his attempts were met with interruptions and argument from Raeburn. Officer Gibson then asked for Raeburn's identification. Raeburn complied slowly while continuing to argue with and interrupt Officer Gibson. Officer Gibson had a warrant check run and then

[1]The Honorable D.P. Marshall Jr., Chief Judge, United States District Court for the Eastern District of Arkansas.

-2-

instructed Raeburn to "leave." Raeburn failed to comply and began to question Officer Gibson. Officer Gibson repeatedly instructed Raeburn to "leave" and Raeburn failed to do so. The third time he told Raeburn to leave, Officer Gibson said, "You're going to leave or you're going to jail for criminal trespass." Raeburn still did not leave. Officer Gibson then produced his handcuffs and instructed Raeburn once more to "leave." After that final command, Raeburn said he was leaving. Officer Gibson replied "it's too late" and reached for Raeburn's left arm. Raeburn jerked his left arm away and moved away from Officer Gibson. Officer Gibson then pushed Raeburn onto the hood of his patrol car, using his hands and body to secure Raeburn on the hood. Raeburn struggled, avoiding Officer Gibson's attempts to handcuff him, but eventually he ceased resisting. Officer Gibson finally handcuffed Raeburn's hands behind his back and told him he was under arrest. Officer Gibson cited Raeburn for disorderly conduct, resisting arrest, and trespass, and he transported Raeburn to the Faulkner County Detention Center. After Raeburn complained to the Vilonia Chief of Police, prosecutors dropped all charges against Raeburn, and Officer Gibson was disciplined for violating department policies regarding arrests and was assigned additional training.

Raeburn sued Officer Gibson in his individual and official capacities, alleging violations of Raeburn's constitutional rights under 42 U.S.C. § 1983 and violations of state law. Raeburn alleged that Officer Gibson made an unlawful arrest and used excessive force in violation of the Fourth Amendment; arrested Raeburn in retaliation for Raeburn exercising his First Amendment rights; and committed various state law violations. Raeburn also alleged that the City failed to adequately train Officer Gibson.[2]

---

[2]Under § 1983, "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Here, "the employing governmental entity" is the City of Vilonia. The district court treated the failure to train claim as a claim against the City, and it treated the other § 1983 claims as claims against Officer Gibson in his individual capacity only. Raeburn has not challenged this treatment of his claims in the district court or in this Court. To the extent that Raeburn's complaint could be read to allege an official capacity claim for

The district court granted in part and denied in part Officer Gibson and the City's motion for summary judgment and dismissed all claims. The district court granted the motion insofar as it dismissed the § 1983 claims with prejudice. The district court found that Officer Gibson was entitled to qualified immunity on the unlawful arrest claim because Raeburn's arrest was supported by arguable probable cause, and that Officer Gibson was entitled to qualified immunity on the excessive force claim because the amount of force he applied to Raeburn was reasonable. Additionally, the district court found that Raeburn's retaliatory arrest claim failed because Officer Gibson had arguable probable cause to arrest him, and that Raeburn's failure to train claim against the City failed because there was no underlying constitutional violation. The district court denied the motion as to the state law claims, declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) and thus dismissing them without prejudice. Raeburn appeals only the grant of summary judgment on the § 1983 claims.[3]

## II.

"We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to [Raeburn] as the nonmoving party and drawing all reasonable inferences in [his] favor." Roebuck v. USAble Life, 992 F.3d 732, 735 (8th Cir. 2021). "Courts conduct a two-part inquiry to determine whether qualified immunity protects a government official from liability: (1) whether the facts taken in a light most favorable to [the plaintiff] make out a violation of a

_____

unlawful arrest, excessive force, or First Amendment retaliation, Raeburn's failure to raise these arguments below means we will not consider them for the first time on appeal. See Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc., 809 F.3d 1018, 1022 (8th Cir. 2016).

[3]Raeburn does not mention the state law claims in his Issues Presented, and his brief contains a single passing reference to the Arkansas Civil Rights Act. Because Raeburn has failed to meaningfully argue the state law claims on appeal, any arguments regarding the state law claims are waived. See Ahlberg v. Chrysler Corp., 481 F.3d 630, 638 (8th Cir. 2007).

constitutional . . . right; and (2) whether that right was clearly established" at the time of the official's alleged misconduct. Hoyland v. McMenomy, 869 F.3d 644, 652 (8th Cir. 2017) (second alteration in original) (citation omitted). "The court may consider these steps in any order, but '[u]nless the answer to both of these questions is yes, the [official] [is] entitled to qualified immunity.'" Ehlers v. City of Rapid City, 846 F.3d 1002, 1008 (8th Cir. 2017) (first alteration in original) (citations omitted). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (citation omitted).

A.

Raeburn first argues that the district court erred in granting summary judgment based on qualified immunity in favor of Officer Gibson on Raeburn's unlawful arrest claim. He also asserts that the dismissal of his charges has preclusive effect in this litigation and operates to bar relitigation of the issue of probable cause because it establishes that Officer Gibson's arrest of Raeburn was not supported by probable cause. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause,'" Ehlers, 846 F.3d at 1008-09 (citation omitted), "that is, whether the officer should have known that the arrest violated plaintiff's clearly established right," Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996) (White, J.). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" Ehlers, 846 F.3d at 1009 (citation omitted). "A court properly applies collateral estoppel[, or issue preclusion,] to bar a party from relitigating an issue actually and necessarily decided in a prior proceeding based on the same or a different cause of action." Devan v. City of Des Moines, 767 F.2d 423, 424 (8th Cir. 1985) (per curiam) (citation omitted) (discussing preclusion in a federal civil rights action).

The district court concluded that Officer Gibson was entitled to qualified immunity on the unlawful arrest claim because he had arguable probable cause to arrest Raeburn for obstructing governmental operations in violation of Ark. Code Ann. § 5-54-102. We conclude that the district court correctly granted summary judgment to Officer Gibson on the unlawful arrest claim, albeit for a different reason. We find that Officer Gibson was entitled to qualified immunity because he had arguable probable cause to arrest Raeburn for criminal trespass in violation of Ark. Code Ann. § 5-39-203. See Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 934 (8th Cir. 2012) (appellate court may affirm "on any ground supported by the record" (citation omitted)).

Section 5-39-203 provides: "A person commits criminal trespass if he . . . purposely enters or remains unlawfully in or upon . . . [t]he premises owned or leased by another person." Ark. Code Ann. § 5-39-203. Here, Officer Gibson was informed by school officials that Raeburn had instigated a verbal altercation on school property in the presence of high school students. Additionally, school officials requested Officer Gibson's assistance and specifically requested that Raeburn be told to leave if he could not calm down. It was objectively reasonable for Officer Gibson to believe that school officials had vested him with the authority to decide whether Raeburn failed to calm down and should leave school property. The video demonstrates that a reasonable officer could have perceived Raeburn's behavior to be uncooperative and not calm, again in the presence of high school students. And Officer Gibson instructed Raeburn to leave school property numerous times, but Raeburn repeatedly resisted these commands. Based on these circumstances, it was not objectively unreasonable for Officer Gibson to believe that Raeburn was "remain[ing] unlawfully" on school property when Raeburn refused to obey Officer Gibson's commands to leave. See id. Officer Gibson was not "plainly incompetent," nor did he "knowingly violate the law," when he arrested Raeburn for criminal trespass. See Ashcroft, 563 U.S. at 743 (citation omitted). And because the question of whether there was probable cause (or arguable probable cause) to arrest focuses on the circumstances existing at the time of the arrest, Raeburn has not demonstrated that the later dismissal of his charges was an adjudication that no

-6-

arguable probable cause existed to arrest him, and thus the dismissal has no preclusive effect here.  See Devan, 767 F.2d at 424; cf. Ehlers, 846 F.3d at 1009 (probable cause exists when circumstances "*at the time of the arrest* 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense'" (emphasis added) (citation omitted)).  On this record, it was not clearly established that the arrest violated Raeburn's constitutional rights because Officer Gibson had arguable probable cause to arrest Raeburn for criminal trespass.  See Habiger, 80 F.3d at 295.  Accordingly, the district court did not err in granting summary judgment to Officer Gibson based on qualified immunity on Raeburn's unlawful arrest claim.

B.

Raeburn next argues that the district court erred in granting summary judgment in favor of Officer Gibson on the excessive force claim.  We disagree.  The video shows that Raeburn was noncompliant and jerked away when Officer Gibson attempted to arrest him, which justified Officer Gibson's use of minimal force to effectuate the arrest.  See Ehlers, 846 F.3d at 1011 (officer did not use excessive force when he executed a takedown on suspect who ignored two commands to put his hands behind his back; suspect "at least appeared to be resisting" and thus officer "was entitled to use the force necessary to effect the arrest").  Raeburn contends that he was not actively resisting arrest, but we do not accept his version of the facts because it is "blatantly contradicted by the record."  See Scott v. Harris, 550 U.S. 372, 380 (2007).  Officer Gibson's use of his hands, body, and patrol car in order to secure Raeburn was not excessive.  After Raeburn ceased resisting, Officer Gibson removed his left hand and used only his body to hold Raeburn down to handcuff him.  Officer Gibson's use of force was objectively reasonable under the circumstances.  See Carpenter v. Gage, 686 F.3d 644, 649-50 (8th Cir. 2012) (deputies entitled to qualified immunity on excessive force claim where they "reasonably could have interpreted [arrestee's] actions as resistance and [they] responded with an amount of force that was reasonable to effect the arrest"); Ehlers, 846 F.3d at 1011.  Thus, we conclude that no constitutional violation occurred with

-7-

respect to the force applied by Officer Gibson and that the district court did not err in granting summary judgment on the excessive force claim.

## C.

The district court also correctly dismissed the two remaining federal claims. Raeburn's First Amendment retaliatory arrest claim against Officer Gibson fails as a matter of law because Officer Gibson had arguable probable cause to arrest him. See Peterson v. Kopp, 754 F.3d 594, 602 (8th Cir. 2014) (explaining that lack of probable cause or arguable probable cause is an element of a retaliatory arrest claim).[4]  And Raeburn's failure to train claim against the City fails as a matter of

_____

[4]Raeburn argues that the existence of arguable probable cause does not bar his retaliatory arrest claim because officers generally exercise their discretion not to arrest in these circumstances, citing Nieves v. Bartlett, 139 S. Ct. 1715, 1727 (2019) ("Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.").  As proof that officers generally exercise their discretion not to arrest in these circumstances, Raeburn points to the Vilonia Chief of Police's statements during Officer Gibson's internal investigation that (1) he did not think there was sufficient probable cause to arrest Raeburn for disorderly conduct, and (2) he would not have charged Raeburn with obstruction.  But although the Supreme Court has held that the "no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," id., Raeburn presented no such objective evidence.  Even if he did, Nieves was decided in May 2019, more than a year after the events giving rise to Raeburn's claims, and Nieves did not decide whether the exception was clearly established when the plaintiff was arrested in 2014, cf. Rochell v. City of Springdale Police Dep't, 768 F. App'x 588, 591 (8th Cir. 2019) (Colloton, J., concurring) (agreeing that district court did not err in denying qualified immunity in light of a 2018 case's "definition of what was clearly established law in [September] 2014," when September 2014 was "more than a year before the incident in this case").  Thus, Nieves did not clearly establish at the time of Officer Gibson's alleged misconduct (April 2018) that there is an exception to the general rule that arguable probable cause defeats a retaliatory arrest claim.  See Reichle v. Howards, 566 U.S. 658, 663 (2012) (holding that officers were entitled to

law because Officer Gibson is not liable.  See Sinclair v. City of Des Moines, 268 F.3d 594, 596 (8th Cir. 2001) (per curiam) ("Because the police officers are absolved of liability, the City cannot be held liable for their actions.").  Accordingly, the district court did not err in granting summary judgment on the § 1983 claims.

III.

We affirm the district court's judgment.

_____

---

qualified immunity on retaliatory arrest claim because "at the time of [plaintiff's] arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment").